CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

January 30, 2026

LAURA A. AUSTIN, CLERK
BY:  s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division**

| | |
|---|---|
| MSRC HARRISONBURG RE LLC, | ) |
| | ) |
| and | ) |
| | ) |
| MSRC ONE, LLC, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No.: ___5:26cv14___ |
| | ) |
| THE CITY OF HARRISONBURG, VIRGINIA, | ) |
| | ) |
| and | ) |
| | ) |
| THE CITY COUNCIL OF HARRISONBURG, VIRGINIA, | ) |
| | ) |
| and | ) |
| | ) |
| THE DEPARTMENT OF COMMUNITY DEVELOPMENT, | ) |
| | ) |
| and | ) |
| | ) |
| ADAM FLETCHER, DIRECTOR OF THE DEPARTMENT OF COMMUNITY DEVELOPMENT OF HARRISONBURG, VIRGINIA | ) |
| | ) |
| SERVE:   Christopher Brown | ) |
| City Attorney | ) |
| 409 S. Main Street | ) |
| Harrisonburg, Virginia 22801 | ) |
| | ) |
| Defendants. | ) |

<u>**COMPLAINT**</u>

Plaintiffs, MSRC Harrisonburg RE LLC ("MSRC") and MSRC One, LLC ("Operator")

(collectively, "Plaintiffs"), by counsel, state the following for their Complaint against Defendants

The City of Harrisonburg, Virginia ("Harrisonburg"); The City Council of Harrisonburg, Virginia ("City Counsel"); The Department of Community Development ("Community Development"); and Adam Fletcher, Director of the Department of Community Development ("Fletcher") (collectively, "Defendants"):

## Nature of the Action

1.      More than a year and a half ago, Plaintiffs began to plan, construct, and operate an inpatient substance use treatment facility in Harrisonburg. Such a facility would be the only one of its kind in Harrisonburg, and there is great need within the community and the surrounding area for its services. Presently, Harrisonburg residents must leave the city and surrounding areas to receive inpatient treatment for substance use. Harrisonburg city leaders have repeatedly stressed that this service is critical and necessary for city residents.

2.      After locating a potential site for the facility, MSRC directly contacted the city government to ensure the site would be suitable for the project prior to purchasing the property. MSRC only moved forward with the project after receiving and based on the city government's confirmation that MSRC could construct, and Operator could operate, an inpatient substance use treatment facility at that location.

3.      Despite knowing that MSRC was only purchasing the property for use as an inpatient substance use treatment facility and repeated acknowledgments that Harrisonburg needs such facilities, the city government then sought to block the project by fast tracking an amendment to its zoning ordinance to require a special use permit for inpatient substance use treatment facilities. The city government has explicitly acknowledged that the purpose of the amendment was to block MSRC's facility. To make matters worse, Harrisonburg issued a building permit to MSRC, only to issue a verbal stop work order just days later.

2

4.     As a result, MSRC now holds a partially completed, structurally unsound facility that endangers the public and which it cannot renovate or use for its intended purpose—even though MSRC began discussions with the city government about that purpose more than 18 months ago. This project began as an opportunity to help the greater community with approval and support from the government but has now been stalled and frustrated by Defendants' last-second change of heart and attempt to frustrate MSRC's efforts and progress. The Defendants have not only harmed and are continuing to harm Plaintiffs and their potential patients, but also those patients' families, children, and employers. Defendants' actions negatively affect the community as a whole.

5.     In sum, Plaintiffs have made every effort to work with Harrisonburg to address a recognized and glaring city need.  Plaintiffs have been forthcoming regarding their intentions, have strived to take a collaborative approach as shown by their communications with the city government, and have expended tremendous effort to hold up their end of the bargain. The city government has responded by repeatedly misleading and obstructing Plaintiffs. Defendants' actions violate not only MSRC's vested rights in the property but the rights of the intended residents of the facility—individuals in treatment for addiction—under federal and state anti-discrimination laws. Defendants' actions are unlawful and discriminatory and must be redressed.

**<u>Parties</u>**

6.     MSRC Harrisonburg RE LLC is a Virginia limited liability company with its principal place of business located in Pikesville, Maryland. MSRC owns the property at issue and is constructing the substance use treatment facility.

7.      MSRC One, LLC, is a Virginia limited liability company with its principal place of business located in Pikesville, Maryland. MSRC One, LLC will operate the facility once it has been constructed.

8.      Harrisonburg is a body politic and corporate and political subdivision of the Commonwealth of Virginia.

9.      City Council is the governing body for Harrisonburg.

10.     Community Development is a department within the Harrisonburg city government and is responsible for land use, planning, and zoning within Harrisonburg.

11.     Fletcher is the Director of Community Development and was the director for all relevant times. Upon information and belief, Fletcher resides within the Western District of Virginia.

## Jurisdiction and Venue

12.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the Due Process Clause of the Fourteenth Amendment, the Americans with Disabilities Act, and the Fair Housing Act.

13.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because such claims form part of the same case or controversy as the federal claim and because judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state law claims.

14.     This Court has personal jurisdiction over Defendants because Defendants reside in and committed the acts forming the basis of this Complaint within this jurisdiction.

15.     Venue is proper in this Court as to Defendants pursuant to 28 U.S.C. § 1391(b) because part of the events or omissions giving rise to the claims in this action occurred in the

Harrisonburg Division of the United States District Court for the Western District of Virginia, and

also because Defendants are subject to the Court's personal jurisdiction with respect to this action.

**Factual Allegations**

16.    MSRC is seeking to develop an inpatient substance use treatment facility in

Harrisonburg (the "Project").

17.    Operator will operate the inpatient substance use treatment facility once it has been

constructed.

18.    The inpatient substance use treatment facility will provide comprehensive care and

resident treatment programs to individuals suffering from drug or alcohol addiction. During their

treatment, these individuals will reside in the facility.

19.    Fatal drug overdoses are currently the leading cause of unnatural death in Virginia

and have been so since 2013. *See, e.g.,* Va. Dep't of Health, Office of the Chief Medical Examiner,

*Fatal Drug Overdose Quarterly Report*, at 2 (Apr. 2025).

20.    Harrisonburg, and surrounding localities, are particularly in need of substance use

treatment facilities.

21.    Indeed, increased substance abuse and overdoses are among "the most serious

health problems in [the] community." Sentara RMH Med. Ctr., *Community Health Needs

Assessment 2021*, 35 (2021).

22.    Despite this recognition, the problem largely remains unaddressed. As of last year,

the region had "higher hospitalization rates (per 100,000 population) due to drug overdose

compared to Virginia rates." Sentara RMH Med. Ctr., *Community Health Needs Assessment 2025*,

30 (2025).

23.    There are currently no inpatient substance use treatment facilities in Harrisonburg.

24.    On July 16, 2024, MSRC contacted the Planning and Zoning Division of the Department of Community Development for Harrisonburg by phone and electronic mail.  A true and accurate copy of MSRC's correspondence is attached as **Exhibit A**.

25.    MSRC informed Community Development that it was interested in purchasing real property located at 25 Maryland Avenue, Harrisonburg, Virginia 22801 (the "Property") and intended to construct an inpatient substance use treatment facility.

26.    MSRC specifically requested that Community Development confirm that the Property was zoned correctly for this intended use.

27.    On July 17, 2024, Christopher Perez ("Perez"), a Zoning Specialist in Community Development, responded to MSRC's request and stated, "I can **confirm** that, from a zoning perspective, a substance use treatment facility would be ***allowed by right*** at 25 Maryland Avenue." Ex. A (emphasis added).

28.    After receiving that confirmation, MSRC replied that it would "circle back for a ***formal determination letter*** should [it] move forward with the transaction." Ex. A (emphasis added).

29.    After touring the Property, on July 24, MSRC informed Perez that it was "about to submit an offer" to purchase the Property and wanted to "obtain a ***formal zoning determination letter***." Ex. A. (emphasis added). MSRC further stated, "Would you be able to help me understand the process and timeline to obtain a ***formal zoning determination letter***?" *Id.* (emphasis added).

30.    Perez instructed MSRC that "[i]n order to receive a formal zoning determination, you will need to apply for a zoning verification letter" and attached the application. Ex. A.

31.    On July 26, 2024, MSRC complied with the instructions supplied by Perez and submitted a Zoning Verification Letter Application seeking "[t]he current zoning classification"

for the Property and confirmation that "the current or proposed use of the property [is] in compliance with the current zoning ordinance and regulations of [the] district." A true and accurate copy of the Zoning Verification Letter Application is attached as **Exhibit B**.

32.     That same day, Perez provided MSRC with a Zoning Verification Letter stating that the Property was zoned R-3 Medium Density Residential District and that the "proposed use of the property as a substance use treatment facility is permitted by right per City of Harrisonburg Zoning Ordinance Section 10-3-48.3(10)." A true and accurate copy of the Zoning Verification Letter is attached as **Exhibit C**.

33.     Given that MSRC had expressly requested a formal zoning determination letter, complied with provided instructions, and received a letter in response without further instructions, MSRC reasonably believed that it had acquired a formal zoning determination.

34.     Notably, Harrisonburg's planning and zoning website makes no reference to formal zoning determination letters; it only references zoning verification letters. *See* Planning & Zoning, City of Harrisonburg (last accessed Jan. 9, 2026), https://www.harrisonburgva.gov/planning-zoning.

35.     The zoning verification letter section states:

A zoning verification letter is a document provided by the City to verify the current zoning of a property. The letter can also confirm: whether the existing use is conforming to the Zoning Ordinance, the types of uses allowed in the specific zoning district, whether the property has received zoning variances, if property is within a special or overlay district, if the property was developed with an approved site plan, if the property is in compliance with minimum parking requirements, and many other details. Depending upon the amount of the information requested, there could be a fee of $50.00. Typically, requests take one to two weeks to complete, but may take longer if the property has complex issues or nonconformities. ***Virginia Code Section 15.2-2286(A)(4) allows Zoning Administrators up to 90 days*** to respond to a request unless the requestor has agreed to a longer period.

Zoning    Information,    City    of    Harrisonburg    (last    accessed    Jan.    9,    2026),

https://harrisonburgva.gov/zoning#ZoningVerificationLetter (emphasis added).

36.      Pursuant to Virginia Code § 15.2-2286(A)(4), "[t]he zoning administrator shall

respond within 90 days of a request for a ***decision or determination*** on zoning matters within the

scope of his authority unless the requester has agreed to a longer period." Va. Code § 15.2-

2286(A)(4) (emphasis added). The code section relates to formal zoning determinations, not

zoning verification letters.

37.      Having received written confirmation that an inpatient substance use treatment

facility would be a permitted, by right use, MSRC proceeded with negotiations related to

purchasing the Property.

38.      On December 18, 2024, MSRC entered into a Purchase and Sale Agreement to

purchase the Property for $1,900,000.

39.      MSRC received judicial approval for the sale on July 17, 2025.

40.      The closing occurred on August 6, 2025, and MSRC acquired the Property.

41.      On September 15, 2025, MSRC filed a building permit application, later to be

designated No. 2025-0097, to establish a new inpatient substance use disorder facility on the

Property.

42.      Despite being aware of the Project and having confirmed that the Property was

suitable for the Project more than a year before, on October 3, 2025, Community Development

informed MSRC that "a zoning ordinance amendment to make inpatient substance abuse treatment

facilities only allowable by special use permit in the R-3, Medium Density Residential District and

the B-2, General Business District is being considered." A true and accurate copy of the October

3 correspondence is attached as **Exhibit D**.

43.     The proposed zoning text amendment (the "Zoning Ordinance Amendment") would add the following definition of "inpatient substance use disorder treatment facility" to the zoning ordinance:

> A facility licensed by the Department of Behavioral Health and Developmental Services of the Commonwealth of Virginia that provides living, sleeping, and sanitation accommodation for substance use disorder treatment service delivered on a 24-hour per day basis in an alcohol or drug rehabilitation facility or an intermediate care facility.

A true and accurate copy of the Zoning Ordinance Amendment is attached as **Exhibit E**.

44.     In doing so, the Zoning Ordinance Amendment differentiated inpatient substance use facilities from other medical facilities.

45.     Under the Zoning Ordinance Amendment, inpatient substance use disorder treatment facilities would only be permitted in R-3 and B-2 zones, would no longer be by-right, and, instead, would require approval by City Council for a special use permit.

46.     On October 8, 2025, the Planning Commission held a meeting to consider the proposed Zoning Ordinance Amendment. At this meeting, staff acknowledged that MSRC's building permit application was the impetus for the new ordinance and that Harrisonburg currently had no inpatient substance use disorder treatment facilities. A true and accurate copy of the minutes of the October 8 Planning Commission meeting and the corresponding staff report are attached as **Exhibit F**.

47.     The staff report acknowledged that MSRC filed a building permit application, that the Project was a permitted, by-right use under the current zoning, and that "the applicant may gain vested rights to operate." Ex. F.

48.     At this meeting, a Planning Commission member acknowledged that "I am an advocate for these types of treatment facilities and the fact that we need them in our community. There is not enough treatment available for people that have needs for this." *See* Ex. F at 16.

9

However, this member supported the Zoning Ordinance Amendment out of concerns related to facility sizes and protocols related to residents. **The member expressed a concern that residents would be released directly into the community.**

49.    A motion to recommend the Zoning Ordinance Amendment passed 6-0.

50.    On October 13, 2025, counsel for MSRC served a letter on the Deputy Director of Community Development and a Zoning Administrator. In this correspondence, MSRC noted that (1) MSRC had a vested right in its use of the Property as an inpatient substance use treatment facility; (2) Harrisonburg had failed to follow the procedural requirements for a zoning amendment as the amendment had been initiated by staff; and (3) the proposed Zoning Ordinance Amendment appeared to violate several anti-discrimination laws. A true and accurate copy of the October 13 correspondence is attached as **Exhibit G**.

51.    MSRC did not receive a direct response to this letter.

52.    On October 30, 2025, the Planning Commission held a special meeting for the sole purpose of considering the proposed ordinance.  Community Development staff acknowledged that they had received the October 13 letter and acknowledged that Community Development had not properly raised the Zoning Ordinance Amendment. The Planning Commission then remedied the procedural error and unanimously voted to "direct staff to initiate consideration of a [zoning ordinance] to amend provisions of the ordinance related to inpatient substance abuse disorder treatment facilities, hospitals, and other related terms."  A true and accurate copy of the minutes of the October 30 Planning Commission and the corresponding staff report is attached as **Exhibit H**.

53.    At this meeting, a member of the Planning Commission acknowledged the need for such a facility but also expressed a concern for the "impact on the community."

54.     On November 11, 2025, the Zoning Division of Community Development completed its review and approved the building permit.

55.     On November 13, 2025, the Planning Commission held a meeting to consider the proposed ordinance and voted unanimously to recommend that the amendment move forward to City Council.

56.     At this Planning Commission meeting, a commissioner noted that "[he is] an advocate for this type of facility" and acknowledged that these facilities are "a useful thing to have in our community." A true and accurate copy of the minutes of the November 13 Planning Commission meeting and the corresponding staff report is attached as **Exhibit I**.

57.     Staff again confirmed that there are presently no inpatient substance use treatment facilities in Harrisonburg and that the impetus for the Zoning Ordinance Amendment was MSRC's planned facility. *See* Ex. I.

58.     While items from the Planning Commission typically are not presented to City Council until the following month, the Zoning Ordinance Amendment was scheduled to be heard twelve days later at the next City Council meeting. *See* Ex. I.[1]

59.     On November 25, 2025, the City Council held a meeting and unanimously voted to approve the Zoning Ordinance Amendment. A true and accurate copy of the minutes of the November 25 City Council meeting is attached as **Exhibit J**.

60.     At this City Council meeting, Fletcher spoke in favor of the Zoning Ordinance Amendment. Fletcher stated:

> This is a Zoning Ordinance Amendment for multiple sections of the zoning ordinance *really stemming from one particular use* that we want to define . . .

---

[1]     In the staff report for the November 13 Planning Commission meeting, the anticipated date for the first reading of the Zoning Ordinance Amendment is December 10, 2025, and the second reading is January 13, 2026. However, the Planning Commission fast tracked this amendment instead of adhering to normal protocol.  *See* Ex. I.

earlier this summer . . . we learned a quite a bit . . . about a use known as inpatient substance use disorder treatment facility . . . we had questions about in what zoning district such use could operate and then after answering that and placing it into a category we also then had [a] building permit applied for . . . back in September and the more we learned about this type of facility, *while we definitely recognize the benefit of having such a facility in the city for our community* . . . the building permit that was applied for back in September could create an opportunity that on this R-3 property that this use could established and they could get a *vested right* . . . if they do fulfill their building permit operation they could become immediately non-conforming and if they want to expand that facility or add to that facility in any way they would have to apply for a special use permit which is what the ordinance amendment that I am proposing this evening is to create . . . so as we began to learn more about this we really need to *pinpoint this type of use.*

*See* Ex. J.

61.    Indeed, the Zoning Ordinance Amendment has Defendants' intended effect of "separating" MSRC's inpatient substance use treatment facility "from other medical uses and only allowing it by special use permit (SUP) in both the R-3 and the B-2, General Business District." *See* Ex. F at 2. Other medical uses, such as assisted living facilities, institutional care facilities, funeral homes, medical clinics, and professional offices remain by-right uses in the R-3 district. *See* Ex. E at 2, § 10-3-48.3.

62.    MSRC submitted its architectural site plan to Harrisonburg on December 4, 2025.

63.    On December 9, 2025, City Council again voted to approve the Zoning Ordinance Amendment, and the amendment became effective.

64.    On December 11, 2025, Community Development issued Building Alteration Permit No. 2509-0097 to MSRC. A true and accurate copy of the Permit is attached as **Exhibit K**.

65.    Community Development also approved the architectural site plan on December 11. A true and accurate copy of the approved architectural site plan is attached as **Exhibit L**.

66.    On December 16, 2025, Community Development confirmed that it had everything necessary to review the plan. However, Community Development informed MSRC that it was

"holding on payment and getting [the plan] into the review rounds as there are a few items for the City Attorney that need[] to be addressed." A true and accurate copy of the December 16 correspondence is attached as **Exhibit M**.  Community Development did not acknowledge that the building permit had already been issued on December 11.

67.    On December 17, 2025, Harrisonburg provided a receipt confirming payment of the permit fees, by MSRC through its contractor, AEG Contracting Inc., to MSRC. A true and accurate copy of the receipt is attached as **Exhibit N**.

68.    Given that MSRC had received a building permit and a receipt for payment of fees, MSRC began construction on the facility.

69.    On December 22, 2025, Community Development cancelled a previously scheduled inspection on the Property and issued a verbal stop work order (the "Stop Work Order"). The Director of Community Development, Fletcher, informed MSRC that no new work was permitted and that he could not issue a permit due to legal matters.

70.    To date, MSRC has not received a written Stop Work Order. Defendants have taken the position that this verbal stop work order has effectively "revoked" the previously issued building permit.

71.    Around this time, Harrisonburg removed MSRC's building permit from its publicly available online list of active permits, further indicating that Harrisonburg had "revoked" the December 11 building permit.

72.    The Stop Work Order was particularly concerning, as Defendants did not make any effort to coordinate with MSRC. Work had already begun due to the issuance of the December 11 building permit and several construction activities were in progress when MSRC was ordered to stop.

73.     Several load bearing walls had already been removed, but structural supports had not been added before the Stop Work Order was issued. As such, the structural integrity of the roof of the building is at risk and poses a danger to the public.

74.     In fact, the cancelled inspection related to concrete footings, which were required for new steel columns to support the roof.

75.     Had Defendants at least coordinated with MSRC, MSRC could have secured the structure prior to the cessation of work.

76.     Furthermore, individuals with substance use issues and Operator's potential patients are either having to leave Harrisonburg for treatment or are simply not receiving treatment at all.

77.     Operator has been unable to begin providing services due to Defendants' actions.

**COUNT I - Declaratory Judgment**
**Against All Defendants**

78.     Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this Count.

79.     Pursuant to Virginia Code § 15.2-2307:

A. Nothing in this article shall be construed to authorize the impairment of any vested right. Without limiting the time when rights might otherwise vest, landowner's rights shall be deemed vested in a land use and such vesting shall not be affected by a subsequent amendment to a zoning ordinance when the landowner (i) obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project, (ii) relies in good faith on the significant affirmative governmental act, and (iii) incurs extensive obligations or substantial expenses in diligent pursuit of the specific project in reliance on the significant affirmative governmental act.

B. For purposes of this section and without limitation, the following are deemed to be significant affirmative governmental acts allowing development of a specific project: . . . (vii) the zoning administrator or other administrative officer has issued a written order, requirement, decision or determination regarding the permissibility of a specific use . . .

14

Va. Code § 15.2-2307(A)–(B).

80.    MSRC, as owner of the Property, obtained and was the beneficiary of a significant affirmative governmental act.

81.    Correspondence between MSRC and Defendants, the Zoning Verification Letter, the approval of the Zoning Division, and approval of the building permit all constitute "significant affirmative governmental acts."

82.    The relevant correspondence and Zoning Verification Letter occurred more than sixty days before the Zoning Ordinance Amendment was enacted.

83.    MSRC relied in good faith on Defendants' significant governmental acts.

84.    MSRC's purchase of the Property; hiring of engineers, architects, and consultants; filing of the application for the building permit; and beginning construction all constitute good faith reliance.

85.    MSRC has incurred extensive obligations and substantial expenses in pursuing the construction and operation of an inpatient substance use treatment facility.

86.    These obligations and expenses include, but are not limited to, purchasing the property, design fees, engineering fees, architectural fees, consultant fees, and construction costs.

87.    MSRC's expenses in its diligent pursuit in reliance on Defendants' significant affirmative governmental acts exceed $3.3 million.

88.    MSRC has a vested right in constructing and operating an inpatient substance use treatment facility on the Property.

89.    By enacting the Zoning Ordinance Amendment and issuing the Stop Work Order, Defendants have violated MSRC's vested right and by-right use of the Property.

90.    The dispute between Defendants and MSRC is an actual controversy.

15

91.     This Court has supplemental jurisdiction over this claim.

92.     Awarding a declaratory judgment would not be an abuse of this Court's discretion.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment finding that MSRC has a vested right in the construction and operation of an inpatient substance use treatment facility on the Property and finding that the Zoning Ordinance Amendment is void and of no effect because it violates Virginia law governing vested rights.

### COUNT II – Injunctive Relief
### <u>Against All Defendants</u>

93.     Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this Count.

94.     Injunctive relief to prevent Defendants from enforcing the Zoning Ordinance Amendment and Stop Work Order is appropriate.

95.     MSRC and Operator are likely to succeed on the merits in that Defendants' actions violate Plaintiffs' vested rights; violate Plaintiffs' procedural and substantive due process rights under the Fourteenth Amendment; and amount to unlawful discrimination under the Americans with Disabilities Act, Fair Housing Act, and Virginia Fair Housing Law.

96.     Defendants' actions have caused immediate injury to Plaintiffs, and the ongoing harm is irreparable.

97.     For example, the structural instability created by the Stop Work Order poses an immediate public safety hazard. Load-bearing walls have been removed in anticipation of installing steel support columns. The cancelled December 22 inspection was for concrete footings necessary to support the steel support columns. Without these supports, the facility's roof is at risk of collapse. MSRC has been unable to secure the building due to the Stop Work Order, creating a danger to the public.

98.     The balance of equities weighs in favor of Plaintiffs, as MSRC relied in good faith on Defendants' repeated statements that the construction and operation of an inpatient substance use treatment facility was a permitted, by-right use of the Property and because Defendants issued MSRC a building permit before withdrawing it without any coordination with MSRC. Based on these same statements and actions, Operator also relied in good faith and has taken steps toward operating the facility.

99.     Granting injunctive relief is in the public interest to protect property rights and public safety and to prevent housing discrimination.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order enjoining Defendants from enforcing the Zoning Ordinance Amendment or Stop Work Order against MSRC and Operator.

### COUNT III – Violation of Fourteenth Amendment
### (Procedural Due Process – 42 U.S.C. § 1983)
### Against All Defendants

100.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this Count.

101.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . ." U.S. Const., amend. XIV, § 1.

102.    MSRC has a vested right in constructing and operating an inpatient substance use treatment facility on the Property.

103.    Given that Community Development initially approved the building permit and reversed that decision based on the Zoning Ordinance Amendment, all other requirements have been met.

104.    MSRC has also already paid the permit fee.

105.    The anticipated end users of the facility are individuals with disabilities, *i.e.*, recovering substance users, and also have and retain their constitutional rights.

106.    The verbal issuance of the Stop Work Order and/or the effective revocation of MSRC's building permit were governmental actions that unreasonably deprived MSRC of its legitimate property rights without due process.

107.    Given that the Stop Work Order was verbal, there is no appeal procedure.

108.    Defendants were acting under color of law to deprive MSRC of its constitutional right to due process.

109.    Defendants' actions were arbitrary, capricious, and unfair.

110.    MSRC has been harmed by the deprivation of its due process rights.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment (1) declaring that Defendants have deprived MSRC of its procedural due process rights under the Fourteenth Amendment; (2) enjoining Defendants from enforcing the Zoning Ordinance Amendment or Stop Work Order against MSRC; (3) for compensatory damages of at least $3,300,000; and (4) for reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

### COUNT IV – Violation of Fourteenth Amendment
### (Substantive Due Process – 42 U.S.C. § 1983)
### <u>Against All Defendants</u>

111.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this Count.

112.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . ." U.S. Const., amend. XIV, § 1.

113.    MSRC has a vested right in constructing and operating an inpatient substance use treatment facility on the Property.

114.    Given that Community Development initially approved the building permit and reversed that decision based on the Zoning Ordinance Amendment, all other requirements have been met.

115.    MSRC has also already paid the permit fee.

116.    The anticipated end users of the facility are individuals with disabilities, *i.e.*, recovering substance users, and also have and retain their constitutional rights.

117.    Defendants deprived MSRC of its substantive due process rights through the verbal issuance of the Stop Work Order and/or the effective revocation of MSRC's building permit.

118.    Defendants' actions fall outside the bounds of legitimate government action.

119.    Without a completed structure, and the necessary permits, Operator cannot begin treating individuals with substance use issues.

120.    As a result of Defendants' actions, Plaintiffs have incurred and will continue to incur substantial damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment (1) declaring that Defendants have deprived Plaintiffs of their procedural due process rights under the Fourteenth Amendment; (2) enjoining Defendants from enforcing the Zoning Ordinance Amendment or Stop Work Order against Plaintiffs; (3) for compensatory damages of at least $3,300,000; and (4) for reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT V - Violation of the Americans with Disabilities Act
## Against Harrisonburg, City Council, and Community Development

121.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this Count.

122.    Under the Americans with Disabilities Act ("ADA"), public entities like Harrisonburg, City Council, and Community Development are prohibited from implementing a zoning scheme that treats disabled individuals differently than non-disabled individuals.

123.    Pursuant to 42 U.S.C. § 12102(1)(2), a disability is "a physical or mental impairment that substantially limits one or more major life activities."

124.    Substance use disorder is a disability under the ADA.

125.    Pursuant to 42 U.S.C. § 12210(b)(2), an individual who "is participating in a supervised rehabilitation program" should not be excluded from the protection of the ADA.

126.    Residents of the inpatient substance use treatment facility would be "participating in a supervised rehabilitation program" and are not excluded from the protection of the ADA.

127.    The ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from the participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

128.    Harrisonburg, City Council, and Community Development are all "public entities" subject to the anti-discrimination mandates of the ADA.

129.    Administration of zoning laws and permitting constitute a "service, program, or activity" under the ADA.

130.    The anticipated users of the inpatient substance use treatment facility are disabled under the ADA and meet "the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

131.    Under the ADA, and its impending regulations, "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (i) That

have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(3).

132.    By enacting the Zoning Ordinance Amendment, Defendants have utilized criteria and methods of administration that subject individuals with disabilities to discrimination on the basis of that disability.

133.    Defendants' discrimination was clearly and admittedly intentional. The Zoning Ordinance Amendment was proposed as a direct result of MSRC's building permit application for the express purpose of excluding MSRC's facility from other by-right medical uses. Comments made during the Planning Commission and City Council meetings regarding the future residents to whom Operator would provide services demonstrate that the Zoning Ordinance Amendment was proposed and enacted to exclude those recovering from substance use disorders.

134.    But for the intentional discrimination, the building permit would not have been "revoked" by the verbal Stop Work Order and there would be no question as to the validity of the previously issued building permit.

135.    Further, by "revoking" the building permit, Operator cannot provide services to individuals suffering from substance use issues.

136.    As a result of Defendants' actions, Plaintiffs have incurred and will continue to incur substantial damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment (1) finding that Defendants have engaged in unlawful discrimination and have discriminated in their application of Zoning Ordinance Amendment with respect to the Project and on the basis of disability in violation of the ADA, (2) enjoining Defendants from enforcing the Zoning Ordinance

Amendment or Stop Work Order against Plaintiffs; (3) for compensatory damages of at least $3,300,000 and (4) for attorneys' fees.

**COUNT VI - Violation of the Fair Housing Act**
**Against All Defendants**

137.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this Count.

138.    Under the Fair Housing Act ("FHA"), it is unlawful to "discriminate in the sale or rental, *or to otherwise make unavailable or deny*, a dwelling to any buyer or renter *because of a handicap* of . . . a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f) (emphasis added).

139.    The inpatient substance use treatment facility is a "dwelling" under the FHA, as it is a building intended for occupancy as a residence. 42 U.S.C. § 3602(b).

140.    Pursuant to 42 U.S.C. § 3602(h), a handicap is "a physical or mental impairment which substantially limits one or more of such person's major life activities."

141.    While active drug users are excluded from the definition of handicap, recovering addicts are not excluded and are entitled to the protections of the FHA.

142.    Substance use disorder is a handicap under the FHA.

143.    As such, by enacting the Zoning Ordinance Amendment and carrying out the Stop Work Order, Defendants have "otherwise ma[d]e unavailable" a dwelling due to an individual's handicap in violation of the FHA. In short, making housing unavailable based on disability status as Defendants have done here is discriminatory and a clear violation of the FHA.

144.    As a result of Defendants' actions, Plaintiffs have incurred and will continue to incur substantial damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment (1) finding that Defendants have engaged in unlawful discriminatory housing practices and have discriminated in their application of Zoning Ordinance Amendment with respect to the Project and on the basis of disability in violation of the FHA, (2) for compensatory damages of at least $3,300,000, (3) for punitive damages, and (4) for attorneys' fees.

## COUNT VII - Violation of the Virginia Fair Housing Law
## Against All Defendants

145.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this Count.

146.    The Virginia Fair Housing Law ("VFHL") states that:

It shall be an unlawful discriminatory housing practice for any person to: . . . [r]efuse to sell or rent, or refuse to negotiate for the sale or rental of, or otherwise discriminate or make unavailable or deny a dwelling because of a disability of (i) the buyer or renter; (ii) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (iii) any person associated with the buyer or renter.

Va. Code § 36-96.3(A)(8).

147.    "Person" includes governmental entities. Va. Code § 36-96.1:1.

148.    Pursuant to Virginia Code § 36-96.1:1, disability means "a physical or mental impairment that substantially limits one or more of such person's major life activities."

149.    Additionally, "physical or mental impairment" expressly includes "drug addiction other than addiction caused by current, illegal use of a controlled substance" and alcoholism. Va. Code § 36-96.1:1.

150.    Substance use disorder is a disability under the VFHL.

151.    Defendants have violated the VFHL, through the Zoning Ordinance Amendment, by otherwise "mak[ing] unavailable or deny[ing] a dwelling because of a disability" of individuals intending to reside in a dwelling.

23

152.    Further, under the VFHL:

It shall be an unlawful discriminatory housing practice for any political jurisdiction or its employees or appointed commissions to discriminate in the application of local land use ordinances or guidelines, or in the permitting of housing developments, (i) on the basis of race, color, religion, national origin, sex, elderliness, familial status, source of funds, sexual orientation, gender identity, military status, or disability[.]

Va. Code § 36-96.3(C).

153.    The Zoning Ordinance Amendment, and the resulting verbal Stop Work Order and revocation of the building permit, discriminates against individuals suffering from substance use disorder.

154.    Defendants have violated, and continue to violate, the VFHL by discriminating in the application of local land use ordinances and it the permitting of development on the basis of disability.

155.    As a result of Defendants' actions, Plaintiffs have incurred and will continue to incur substantial damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment (1) finding that Defendants have engaged in unlawful discriminatory housing practices and have discriminated in their application of Zoning Ordinance Amendment with respect to the Project and on the basis of disability in violation of the VFHL, (2) enjoining Defendants from enforcing the Zoning Ordinance Amendment or Stop Work Order against Plaintiffs; (3) for compensatory damages of at least $3,300,000, (4) for punitive damages, and (5) for attorneys' fees.

Dated: <u>January 30, 2026</u>

**MSRC HARRISONBURG RE LLC AND
MSRC ONE, LLC**


By: <u>*/s/ Meredith M. Haynes*</u>
Meredith M. Haynes
Virginia State Bar No. 80163
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6225
Facsimile: (804) 420-6507
mhaynes@williamsmullen.com

John Arch Irvin
Virginia State Bar No. 97044
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6140
Facsimile: (804) 420-6507
jirvin@williamsmullen.com

*Counsel for Plaintiffs MSRC Harrisonburg RE LLC
and MSRC One, LLC*