# EXHIBIT G

# WILLIAMS MULLEN

October 13, 2025

**<u>VIA EMAIL AND FEDEX</u>**
Thanh Dang, ACIP
Deputy Director of Community Development
City of Harrisonburg Community Development
409 South Main Street
Harrisonburg, Virginia 22801
Thanh.Dang@harrisonburgva.gov

Tyler Blanks, CZA
Zoning Administrator
City of Harrisonburg Community Development
409 South Main Street
Harrisonburg, Virginia 22801
Tyler.Blanks@harrisonburgva.gov

Re:     Proposed Zoning Ordinance Amendment – Inpatient Substance Abuse Treatment Facility,
        Hospitals, and other Related Terms; Vested Rights for Permits Under Review
        Tax Parcels: 18-E-9–10, 25 Maryland Avenue

Dear Ms. Dang and Mr. Blanks:

This firm is counsel to MSRC Harrisonburg RE LLC ("MSRC"), which owns property in the City of Harrisonburg located at 25 Maryland Avenue (tax parcels 18/E/9-10) (the "Property"), and to respond to Mr. Blanks' October 3, 2025 correspondence to MSRC. In that correspondence, Mr. Blanks informs MSRC of a proposed zoning ordinance amendment to make inpatient substance abuse treatment facilities only allowable by special use permit in the R-3 Medium Density Residential and B-2 General Business Districts in the City of Harrisonburg. As you know, inpatient substance abuse treatment facilities are currently allowed by right in the City's R-3 Medium Density Residential District, and a building permit (No. 2509-0097) (the "Building Permit") for such a facility on the Property (zoned R-3) is currently under review by the City. On behalf of MSRC, we write concerning certain issues that are relevant to the proposed adoption of the zoning ordinance amendment and to request the City's consideration accordingly.

First, MSRC has satisfied each of the elements to establish vested rights in its use of the Property as a substance abuse treatment facility pursuant to state law.  On July 26, 2024, the City determined the proposed use of the Property as a substance abuse treatment facility "is permitted by right per City of Harrisonburg Zoning Ordinance [§] 10-3-48.3(1)." A copy of the July 26 letter is attached as **Exhibit A**. This determination was based on the City's research, certified as believed to be accurate, and constitutes a "written order, requirement, decision or determination regarding the permissibility of a specific use . . . of a landowner's property" and a significant affirmative governmental act. *See* Va. Code § 15.-2-2307(A); (B). Since receiving the City's determination

Thanh Dang, Deputy Director of Community Development
Tyler Blanks, Zoning Administrator
October 13, 2025
Page 2

more than a year ago, MSRC has incurred extensive obligations and substantial expenses in diligent pursuit of the proposed use of the Property in reliance on the July 2024 determination. *Id.* More specifically, MSRC has incurred approximately $3 million to acquire and rehabilitate the Property (including significant work to the existing structure by way of asbestos abatement) and plan for its development as an inpatient substance abuse treatment facility. MSRC's rights in the proposed use are vested and cannot be affected by the proposed amendment as a result. *See Bd. of Supervisors of Richmond Cnty. v. Rhoads*, 294 Va. 43 (2017) (certificate determining a particular plan for a particular property complied with the applicable zoning ordinance was a significant governmental act such that property owner's rights vested).

Second, in advancing the zoning text amendment the City has failed to follow necessary procedural requirements imposed by law.  In Virginia, a zoning ordinance amendment may be initiated only by (i) resolution of the governing body; (ii) motion of the local planning commission, or (iii) petition of the owner of the property which is the subject of a proposed zoning map amendment. *See* Va. Code § 15.2-2286(A)(7). Additionally, Section 10-3-117 of the City's zoning ordinance similarly provides a "proposed change of district or text may be initiated by the city council on its own motion, or on recommendation by the planning commission, or by petition of the property owner." Based on the information available to MSRC, the proposed amendment was not initiated by any of these enumerated and permissible methods but was instead initiated by City planning staff. This was confirmed during the October 8, 2025 Planning Commission Meeting when staff began its presentation to the Planning Commission by affirmatively stating the proposed amendment is a "staff-initiated zoning ordinance amendment." There is no provision for a staff-initiated zoning ordinance amendment under Virginia law.

Third, the proposed amendment appears to implicate anti-discrimination law, including the Americans with Disabilities Act ("ADA"), the Fair Housing Act ("FHA"), and the Virginia Fair Housing Law, Va. Code §§ 36-96.1–36-96.23. According to the Staff Report provided in advance of the October 8, 2025 Planning Commission Meeting, the proposed amendment defines "inpatient substance use disorder treatment facility" and "separat[es] it from other medical uses and only allow[s] it by special use permit (SUP) in both the R-3 district and the B-2, General Business District." Report at 2, attached as **Exhibit B**. If the amendment is approved, "individuals wanting to establish a new inpatient substance use disorder facility must receive City Council's approval of a SUP to locate on an R-3 or B-2 zoning property and would continue to not be permitted in any other zoning district." *Id.*

Thus, the practical effect and expressly stated intent of the proposed amendment is to differentiate substance use disorder treatment from other medical uses and to subject those who wish to open such facilities to a more onerous and conditional process for approval. This is problematic because patients receiving treatment for substance use are protected under the ADA and FHA, and those laws prohibit a public entity from implementing a zoning scheme that treats disabled individuals differently than non-disabled individuals. *See U.S. v. City of Baltimore*, 845 F. Supp. 2d 640 (D. Md. 2012). The Staff Report's purported justification for the amendment— that it "would provide the community an opportunity to assess potential impacts of a desired

Thanh Dang, Deputy Director of Community Development
Tyler Blanks, Zoning Administrator
October 13, 2025
Page 3

---

location and how such the [sic] use could affect other community services"—does not insulate it from challenge under the ADA or FHA. *Id.* (deference to municipal zoning schemes "does not place municipal zoning laws beyond the purview of federal statutory protections"). As you may be aware, compensatory and punitive damages, plus attorneys' fees, are recoverable for discrimination by a locality in violation of the ADA or FHA, presenting a risk of significant fiscal impact to the City.

Even more significantly, the Staff Report singles out the proposed use of the Property, noting "the applicant may gain vested rights to operate" and proceed notwithstanding the amendment, "but any future expansion of the facility would require a special use permit" if the amendment is approved. Ex. 2 at 2. Under the circumstances, it is difficult to interpret the proposed amendment as anything other than a targeted and discriminatory effort to prohibit or, at minimum, discourage operation of substance use disorder treatment facilities, and this planned facility in particular, in the City. This approach is not only detrimental to MSRC and concerning from an anti-discrimination standpoint, but is also not in the public interest given the acute need for substance abuse treatment in the Commonwealth.[1]

MSRC has already invested substantial time and capital in the Property and hopes to work with the City to bring its plans to fruition. MSRC welcomes an open dialogue regarding the Property, the Building Permit, the proposed amendment, and any operational considerations related to its proposed use, and looks forward to meeting with you to that end in the near future.

Thank you for your time and consideration.

Very truly yours,

Meredith M. Haynes

cc:     MSRC Harrisonburg RE LLC
        Yitzy Halon, CEO, Mainspring Recovery Centers (via email to
        ███████████████████ )
        T. Preston Lloyd, Jr., Esq., Williams Mullen

---

[1]  By way of illustration, fatal drug overdose has been the leading cause of unnatural death in Virginia since 2013. Va. Dep't of Health, Office of the Chief Medical Examiner, *Fatal Drug Overdose Quarterly Report* at 2 (Apr. 2025).



**CITY OF HARRISONBURG**
# COMMUNITY
# DEVELOPMENT

409 SOUTH MAIN STREET, HARRISONBURG, VA 22801
OFFICE (540) 432-7700 • FAX (540) 432-7777

July 26, 2024

Steven "Yitzy" Halon
████████████████
Baltimore, MD 21208

**Re: 25 Maryland Avenue, Harrisonburg, VA**
      **Tax Parcels: 18/E/9-10, R-3 Medium Density Residential District**

Mr. Halon,

In response to your request for information regarding the above-referenced property, we have researched our files and present the following to the best of our knowledge:

1.  The above-referenced property is zoned R-3 Medium Density Residential District. This district is intended for medium density residential development and other uses intended to respect the residential character which are aesthetically compatible within the district by means of architectural expression, landscaping and restrained traffic flow. Residential development includes single-family, duplex, townhouse units, and in special circumstances, multiple-family buildings. Nonresidential development may include institutional buildings such as colleges, universities, hospitals, medical and professional offices, nursing homes and charitable institutions. It is further intended that conversion from residential use to other permitted nonresidential uses be compatible with the character of the district. All nonresidential uses are subject to restrictions and requirements necessary to ensure compatibility with residential surroundings.

2.  The proposed use of the property as a substance use treatment facility is permitted by right per City of Harrisonburg Zoning Ordinance Section 10-3-48.3(10) *Hospitals, convalescent or nursing homes, funeral homes, medical offices and professional offices as defined by article F*.

This information was researched on July 26, 2024, by the undersigned, per request and as a public service. The undersigned certifies the above zoning information contained herein is believed to be accurate and is based upon or relates to the information supplied by the requestor. The information pertains only to the application of the City of Harrisonburg Zoning Ordinance in relation to the use of the above parcel. There may be other local, state, or federal regulations

regarding building or health code issues which are beyond the scope of this zoning information. The Authority assumes no liability for errors and omissions. All information was obtained from public records, which may be inspected during regular business hours.

Sincerely,

The City of Harrisonburg

Christopher Perez
Zoning Specialist



October 8, 2025 Planning Commission Meeting

**Title**
Zoning Ordinance Amendment, Inpatient Substance Use Disorder Treatment Facility, Hospitals, and Other Related Terms — Thanh Dang, Community Development

**Summary**

| | |
|---|---|
| Zoning Ordinance Sections | Amend Sections 10-3-24, 10-3-48.3, 10-3-48.4, 10-3-55.4, 10-3-56.3, 10-3-57.3, 10-3-58.4, 10-3-78, 10-3-84, 10-3-90, 10-3-91, 10-3-97, and 10-3-186 |
| Purpose | • To add a new term and definition for a use known as an "Inpatient Substance Use Disorder Treatment Facility" (referred in public notices as Inpatient Substance Abuse Treatment Facility) and to allow it by special use permit in both the R-3, Medium Density Residential District and B-2, General Business District.<br>• To add a definition for "Hospitals" and to allow it by right in the B-2, General Business District.<br>• To make amendments to other related terms.<br>• To amend zoning district regulations to reflect new and amended terms. |
| Applicant | City of Harrisonburg |
| Planning Commission | October 8, 2025 (Public Hearing) |
| City Council | Anticipated November 12, 2025 (First Reading/Public Hearing)<br>Anticipated November 25, 2025 (Second Reading) |

**Recommendation**
Option 1. Recommend approval of the Zoning Ordinance amendments.

**Fiscal Impact**
N/A

**Context & Analysis**
Currently, inpatient substance use disorder treatment facility uses are allowed by right in the R-3, Medium Density Residential District within a broadly-categorized group of medical-related uses per Section 10-3-48.3 (10). Specifically, subsection (10) allows for the following by right: *"Hospitals, convalescent or nursing homes, funeral homes, medical offices and professional*

*offices as defined by article F."* Staff is proposing to amend the Zoning Ordinance by defining "inpatient substance use disorder treatment facility" and separating it from other medical uses and only allowing it by special use permit (SUP) in both the R-3 district and the B-2, General Business District. Making these amendments would provide the community an opportunity to assess potential impacts of a desired location and how such the use could affect other community services.

The entirety of the proposed ZO amendment is provided within the attached document titled "Current Ordinance Reflecting Recommended Amendments." For ease of reference, the proposed definition of "inpatient substance use disorder treatment facility" is shown below:

> *Inpatient substance use disorder treatment facility:* A facility licensed by the Department of Behavioral Health and Developmental Services of the Commonwealth of Virginia that provides living, sleeping, and sanitation accommodation for substance use disorder treatment service delivered on a 24-hour per day basis in an alcohol or drug rehabilitation facility or an intermediate care facility.

If the ZO amendments are approved as currently drafted, individuals wanting to establish a new inpatient substance use disorder facility must receive City Council's approval of a SUP to locate on an R-3 or B-2 zoned property and would continue to not be permitted in any other zoning district.

On September 15, 2025, a building permit was filed for an inpatient substance use disorder treatment facility on property zoned R-3. Because the use is currently allowed by right, the applicant may gain vested rights to operate, making the facility a lawful nonconforming use if this ordinance amendment is adopted. A nonconforming use may continue to operate, but any future expansion of the facility would require a special use permit There are no other inpatient substance use disorder treatment facilities in Harrisonburg.

Note that there are several outpatient substance use disorder treatment facilities operating in the City within the B-1 and B-2 districts. Outpatient substance use disorder treatment facilities are part-time programs that do not provide overnight services meaning that patients receive treatment while also being able to return home, to work, and/or school. At an inpatient substance use disorder treatment facility, patients stay at the treatment facility where they receive 24-hour support and care. Typical inpatient substance use disorder treatment programs run anywhere from several weeks to several months.

While drafting the amendments for inpatient substance use disorder treatment facilities, it was clear that further amendments were needed to the ZO. Thus, in addition to the aforementioned amendments, staff is proposing the following:

- To add a definition for "hospital" and, due to the intense nature of such a use, remove the ability to locate a hospital in the R-3 district and to only allow it by right within the B-2 district.
- To add a definition and create a new use for "institutional care facility"

2

- To add clarity and consistency with Virginia Code definitions by modifying the following existing ZO definitions: "Assisted Living Facility,"[1] "Family," "Nursing Home,"[2] and "Professional Offices."
- To change the term "Clinic" to "Medical clinic" and modify that definition. Along with amending the definition, changes would be made to allow medical clinics as a by right use in the R-6, Low Density Mixed Residential Planned Community District; the R-7, Medium Density Mixed Residential Planned Community District; the MX-U, Mixed Use Planned Community District; the B-1A, Local Business District; the B-1, Central Business District; and the R-P, Residential-Professional District (Overlay). Furthermore, the modification would add the ability for medical clinics by SUP in both the R-5, High Density Residential District and the M-1, General Industrial District.

If approved as presented, the list of uses permitted by right within Section 10-3-48.3 (10) of the R-3 district's regulations would be amended as follows:

> ~~Hospitals, convalescent or nursing homes,~~ Assisted living facilities, institutional care facilities, funeral homes, medical offices and professional offices as defined by article F.

Due to how the public notice for this request was described, at this time, the terminology "medical office" as shown above in Section 10-3-48.3 (10) will not be changed to "medical clinic" as is planned. If City Council approves the requested ZO amendments, then staff will initiate a new ZO amendment request to amend Section 10-3-48.3 (10) to state the following so that the use of the terminology "medical clinic" is consistent throughout the ZO:

> Assisted living facilities, institutional care facilities, funeral homes, ~~medical offices~~ medical clinics, and professional offices as defined by article F.

No changes are proposed to other district regulations including the other R-3 district, which is known as R-3, Multiple Dwelling Residential District. As indicated at the beginning of Article J., the R-3, Multiple Dwelling Residential District regulations are only applicable to multi-family developments with engineered comprehensive site plans approved before August 14, 2010.

---

[1] Assisted living facility, https://law.lis.virginia.gov/admincode/title22/agency40/chapter73/section10/ and https://www.dss.virginia.gov/facility/alf.cgi.

[2] Nursing home, https://law.lis.virginia.gov/vacode/32.1-123/ and https://www.vdh.virginia.gov/licensure-and-certification/division-of-long-term-care-services/

If the proposed ZO amendments are approved, the table below summarizes in which zoning districts the aforementioned uses would be allowed and whether they are permitted by right or with an approved SUP.

| | R-1, R-2, R-4, R-8, UR | R-3, Medium | R-5 | R-6 & R-7 | UR with R-P overlay | MX-U & B-1A | B-1 | B-2 | M-1 |
|---|---|---|---|---|---|---|---|---|---|
| **Assisted living facility** | - | by right | - | - | - | - | - | - | - |
| **Hospital** | - | - | - | - | - | - | - | by right | - |
| **Inpatient substance use disorder treatment facility** | - | SUP | - | - | - | - | - | SUP | - |
| **Institutional care facility** | - | by right | - | - | - | - | - | - | - |
| **Medical clinic/ Medical office** | - | by right | SUP | by right | by right | by right | by right | by right | SUP |
| **Professional office** | - | by right | SUP | by right | by right | by right | by right | by right | SUP |

*Conclusion*

Staff believes that Planning Commission and City Council should consider inpatient substance use disorder treatment facilities on a case-by-case basis so that the location and potential impacts can be evaluated. Staff recommends approval of the Zoning Ordinance amendments as proposed.

**Options**
1. Recommend approval of the Zoning Ordinance amendments.
2. Recommend approval of the Zoning Ordinance amendments with modifications.
3. Recommend denial of the Zoning Ordinance amendments.

**Attachments**
- Current Ordinance Reflecting Recommended Amendments

4