# EXHIBIT I

Planning Commission
November 13, 2025

## <u>MINUTES OF HARRISONBURG PLANNING COMMISSION</u>

### <u>November 13, 2025</u>

The Harrisonburg Planning Commission held its regular meeting on Thursday, November 13, 2025, at 6:00 p.m. in the City Council Chambers, 409 South Main Street.

Members present: Richard Baugh, Chair; Shannon Porter, Vice Chair; KC Kettler; Rob Jezior and Randy Seitz. Councilmember Laura Dent and Heja Alsindi were absent. Also present: Adam Fletcher, Director of Community Development; Thanh Dang, Deputy Director of Community Development; Wesley Russ, Deputy City Attorney; Meg Rupkey, Planner; Nyrma Soffel, Planner; and Anastasia Montigney, Development Support Specialist/Secretary.

Chair Baugh called the meeting to order.

Chair Baugh asked if there were any corrections, comments or a motion regarding the September 10, 2025, October 8, 2025 and October 30, 2025 Planning Commission meeting minutes.

Commissioner Seitz moved to approve the September 10, 2025, October 8, 2025 and October 30, 2025 Planning Commission meeting minutes.

Vice Chair Porter seconded the motion.

The motion to approve the September 10, 2025, October 8, 2025 and October 30, 2025 Planning Commission meeting minutes passed by voice vote (5-0).

### <u>New Business – Public Hearings</u>
***Consider a request from City of Harrisonburg to amend the Zoning Ordinance to add a new term "Inpatient Substance Use Disorder Treatment Facility" and other related changes***

Chair Baugh read the request and asked staff to review.

On October 8, 2025, Planning Commission held a public hearing to consider Zoning Ordinance (ZO) amendments associated with inpatient substance use disorder treatment facilities, hospitals, and other related terms. Planning Commission recommended approval (6-0) of the ZO amendments. After the public hearing, staff learned that § 15.2-2286(A)(7) of the Code of Virginia, requires, among other things, that ZO amendments and rezonings: "*be initiated (i) by resolution of the governing body; (ii) by motion of the local planning commission; or (iii) by petition of the owner, contract purchaser with the owner's written consent, or the owner's agent therefor, of the property which is the subject of the proposed zoning map amendment*." The proposed ZO amendment related to inpatient substance use disorder facilities had not been initiated by any of the aforementioned methods but was initiated by city staff because staff was previously unaware of the requirement. Once aware, a special meeting was called for October 30, 2025 where staff requested, a motion from Planning Commission to direct staff to prepare a draft ordinance for

1

Planning Commission
November 13, 2025

public hearing and recommendation related to inpatient substance use disorder treatment facilities, hospitals, and other related terms.

Currently, inpatient substance use disorder treatment facility uses are allowed by right in the R-3, Medium Density Residential District within a broadly-categorized group of medical-related uses per Section 10-3-48.3 (10). Specifically, subsection (10) allows for the following by right: *"Hospitals, convalescent or nursing homes, funeral homes, medical offices and professional offices as defined by article F."* Staff is proposing to amend the Zoning Ordinance by defining "inpatient substance use disorder treatment facility" and separating it from other medical uses and only allowing it by special use permit (SUP) in both the R-3 district and the B-2, General Business District. Making these amendments would provide the community an opportunity to assess potential impacts of a desired location and how the use could affect other community services.

The entirety of the proposed ZO amendment is provided within the attached document titled "Current Ordinance Reflecting Recommended Amendments." For ease of reference, the proposed definition of "inpatient substance use disorder treatment facility" is shown below:

> *Inpatient substance use disorder treatment facility:* A facility licensed by the Department of Behavioral Health and Developmental Services of the Commonwealth of Virginia that provides living, sleeping, and sanitation accommodation for substance use disorder treatment service delivered on a 24-hour per day basis in an alcohol or drug rehabilitation facility or an intermediate care facility.

If the ZO amendments are approved as drafted, individuals wanting to establish a new inpatient substance use disorder facility must receive City Council's approval of a SUP to locate on an R-3 or B-2 zoned property and would continue to not be permitted in any other zoning district.

On September 15, 2025, a building permit application was filed for an inpatient substance use disorder treatment facility on property zoned R-3. Because the use is currently allowed by right, the applicant may gain vested rights to operate, making the facility a lawful nonconforming use if this ordinance amendment is adopted. A nonconforming use may continue to operate, but any future expansion of the facility would require a SUP. There are no other inpatient substance use disorder treatment facilities in Harrisonburg.

Note that there are several outpatient substance use disorder treatment facilities operating in the City within the B-1 and B-2 districts. Outpatient substance use disorder treatment facilities are part-time programs that do not provide overnight services meaning that patients receive treatment while also being able to return home, to work, and/or school. At an inpatient substance use disorder treatment facility, patients stay at the treatment facility where they receive 24-hour support and

Planning Commission
November 13, 2025

care. Typical inpatient substance use disorder treatment programs run anywhere from several weeks to several months.

While drafting the amendments for inpatient substance use disorder treatment facilities, it was clear that further amendments were needed to the ZO. Thus, in addition to the aforementioned amendments, staff is proposing the following:

- To add a definition for "hospital" and, due to the intense nature of such a use, remove the ability to locate a hospital in the R-3 district and to only allow it by right within the B-2 district.
- To add a definition and create a new use for "institutional care facility."
- To add clarity and consistency with Virginia Code definitions by modifying the following existing ZO definitions: "Assisted Living Facility,"[1] "Family," "Nursing Home,"[2] and "Professional Offices."
- To change the term "Clinic" to "Medical clinic" and modify that definition. Along with amending the definition, changes would be made to allow medical clinics as a by right use in the R-6, Low Density Mixed Residential Planned Community District; the R-7, Medium Density Mixed Residential Planned Community District; the MX-U, Mixed Use Planned Community District; the B-1A, Local Business District; the B-1, Central Business District; and the R-P, Residential-Professional District (Overlay). Furthermore, the modification would add the ability for medical clinics by SUP in both the R-5, High Density Residential District and the M-1, General Industrial District.
- To change the term "Medical offices" to "Medical clinics" in the R-3, Medium Density Residential District.

No changes are proposed to other district regulations including the other R-3 district, which is known as R-3, Multiple Dwelling Residential District. As indicated at the beginning of Article J., the R-3, Multiple Dwelling Residential District regulations are only applicable to multi-family developments with engineered comprehensive site plans approved before August 14, 2010.

If the proposed ZO amendments are approved, the table below summarizes in which zoning districts the aforementioned uses would be allowed and whether they are permitted by right or with an approved SUP.

| | R-1, R-2, R-4, R-8, UR | R-3, Medium | R-5 | R-6 & R-7 | UR with R-P overlay | MX-U & B-1A | B-1 | B-2 | M-1 |
|---|---|---|---|---|---|---|---|---|---|
| **Assisted living facility** | - | by right | - | - | - | - | - | - | - |

3

Planning Commission
November 13, 2025

| Hospital | - | - | - | - | - | - | - | by right | - |
|---|---|---|---|---|---|---|---|---|---|
| Inpatient substance use disorder treatment facility | - | SUP | - | - | - | - | - | SUP | - |
| Institutional care facility | - | by right | - | - | - | - | - | - | - |
| Medical clinic | - | by right | SUP | by right | by right | by right | by right | by right | SUP |
| Professional office | - | by right | SUP | by right | by right | by right | by right | by right | SUP |

*Conclusion*

Staff believes that Planning Commission and City Council should consider inpatient substance use disorder treatment facilities on a case-by-case basis so that the location and potential impacts can be evaluated. Staff recommends approval of the Zoning Ordinance amendments as proposed.

[1]Assisted living facility,
https://law.lis.virginia.gov/admincode/title22/agency40/chapter73/section10/ and
https://www.dss.virginia.gov/facility/alf.cgi.
 [2] Nursing home, https://law.lis.virginia.gov/vacode/32.1-123/ and
https://www.vdh.virginia.gov/licensure-and-certification/division-of-long-term-care-services/

Additionally, not that while items from Planning Commission are typically presented to City Council the following month, this item will be presented for public hearing at City Council on November 25, 2025. The second reading is anticipated to occur on December 10.

Chair Baugh asked if there any questions for staff.

Vice Chair Porter said are we aware of any other facilities that currently are operating that would be affected by this change?

Ms. Dang said no there are no inpatient substance use disorder treatment facilities in the City. There are some outpatient facilities that would continue to be allowed to operate in the B-2 district. There are no inpatient facilities.

Chair Baugh asked if there were any more questions for staff. Hearing none, he opened the public hearing and invited anyone in the room or on the phone to speak to the request. Hearing none, he closed the public hearing and opened the matter for discussion.

4

Planning Commission
November 13, 2025

Vice Chair Porter said as I have stated previously during the last couple of discussions of this matter, I am an advocate for this type of facility. I think it is a useful thing to have in our community. However, I am very concerned about the specifics related to operational security and discharge protocols for any sort of facility that does this type of work. Particularly one that is in a residential area. I think it is prudent for the City to make this change to put us in a position to be able to review these sorts of things with a special use permit request.

Commissioner Kettler made a motion to approve the request as presented by staff.

Commissioner Seitz seconded the motion.

Chair Baugh called for a roll call vote.

| Commissioner Seitz | Aye |
| Vice Chair Porter | Aye |
| Commissioner Kettler | Aye |
| Commissioner Jezior | Aye |
| Chair Baugh | Aye |

The motion to recommend approval of the Zoning Ordinance Amendment passed (5-0). The recommendation will move forward to City Council on November 25, 2025.

**New Business – Other Items**
***Consider initiating Zoning Ordinance amendments related to setbacks in the R-8 district, meat processing and storage facility in the M-1 district, and sign regulations***

Chair Baugh read the request and asked staff to review.

Ms. Dang said staff requests Planning Commission initiate consideration of Zoning Ordinance amendments related to:

| Applicant | Description of Request |
|---|---|
| AM Yoder & Co | Setbacks in the R-8 District.<br>Article L.4. – R-8, Small Lot Residential District – Section 10-3-59.4, Uses permitted by special use permit – To amend subsection (11) which currently allows with an approved special use permit reducing required side yard setbacks to zero feet where such buildings are single-family detached dwellings, duplex dwellings, or townhomes when specified fire suppression or construction standards are met. The current ordinance does not allow openings in the exterior walls of buildings adjacent to the reduced side yard setback. Proposed is an amendment to allow exterior walls of buildings adjacent to the reduced side yard setbacks to have openings and penetrations in limited circumstances. |
| Honest Meats LLC | Meat processing and storage facility in the M-1 District.<br>Article R. - M-1 General Industrial District – Section 10-3-97, Uses permitted by special use permit – To add a new subsection to allow |

5

| | slaughterhouses by special use permit and to create a new term and definition for "meat processing and storage facility." This may include amendments to clarify that poultry processing is currently and will continue to be allowed by right. |
|---|---|
| City of Harrisonburg (Staff-generated) | Sign Regulations. Article EE. – Signs – To amend the sign regulations to update definitions and requirements related to, but not limited to, roof signs and signage in parking lots. |

Should Planning Commission agree to direct staff to initiate consideration of the ZO amendments, then the following motion may be stated:

*I move that the Planning Commission initiate consideration of zoning ordinance amendments to the City of Harrisonburg Zoning Ordinance to amend provisions relating to setbacks in the R-8 district, meat processing and storage facility in the M-1 district, and sign regulations.*

*The Planning Commission finds that such amendments are required by the public necessity, convenience, general welfare, and good zoning practice, and hereby directs staff to prepare appropriate draft ordinances for public hearings and recommendations in accordance with § 15.2-2286 of the Code of Virginia.*

Chair Baugh asked if there any questions for staff.

Commissioner Seitz said I have a question about the changes in the R-8 district. I found it interesting that there was a provision in the Zoning Ordinance about whether or not to have windows in location of windows. That piqued my curiosity to do a quick skim through the other residential zones. I did not see any other cases where there was something. Is staff comfortable that there are no other situations in the Zoning Ordinance where something that is better covered under the Building Code is addressed in the Zoning Ordinance? I looked through the residential zones, I did not look through any of the commercial zones and stuff as well and I did not see anything.

Mr. Fletcher said I want to make sure I understand your question. Are you questioning if there any reason to add this as a special use permit in the other districts, is that where you are going?

Commissioner Seitz said this is not about a special use permit. This is about, if I understand it right, you are going to allow exterior walls of buildings to have openings and penetrations in limited circumstances. The Virginia Uniform State Building Code is very specific about where windows can be, what their sizes can be, what the opening protectives are, all of that kind of stuff.

Planning Commission
November 13, 2025

When you say under limited circumstances, can we assume that means when permitted by the Building Code?

Ms. Dang said that is correct. There are also some details that are not in this description because I was hesitant to be as specific as what I know now that they are looking to propose but there is going to be some limited circumstances as to what floor or where the opening is relative to the ground level. Also, what you said is true that it would have to comply with the Building Code first.

Mr. Sietz said I look at the bigger issue that somehow a stipulation about windows got included in the Zoning Code I would argue that it should have never been there in the first place. My question then is are there any other instances in the Zoning Ordinance where there is something about windows... That is better addressed by provisions already existing in the State Building Code.

Ms. Dang said I am comfortable with the direction that this amendment is going. I think it is an appropriate use.

Mr. Russ said the reason why it is there is the Uniform Statewide Building Code... localities generally cannot amend or adopt anything that would be stricter than what the Building Code requires. You can impose conditions on special use permits that would otherwise not be permitted. Our Fire Department had concerns about allowing buildings to be...the point at which the Building Code kicks in additional fire protections is much closer to the property line than what the Fire Department was comfortable with. This was the compromise work around.

Commissioner Seitz said is that the local Fire Department or is that a state Fire Department.

Mr. Russ said the local [Fire Department].

Chair Baugh said I am gathering it is relative to R-8 and I guess in theory it would be relative in B-1 but you really do not have this in any other zoning do you?

Ms. Dang said in B-1 we do not have the special use permit. Building Codes would just dictate what the material is and the separation of that.

Chair Baugh said I am just saying the issue of this with buildings this close to a property line.

Ms. Dang said it is only available in the R-8 district for special use permit to get a reduced setback. In all the other districts it is usually a ten-foot side yard setback.

Mr. Fletcher said there are a few Master Plans that allow...

7

Ms. Dang said with the R-8 district we created, working with the Fire Department in knowing that people wanted closer setbacks from the property line to where the building was, one- and two-story buildings can have a seven-foot side yard setback just by right. Three story buildings had to have a ten-foot side yard setback. Those buildings being the single-family detached duplexes and then the special use permit townhomes. What we have built into the R-8 district was back in 2019, where there are duplexes and single-family detached homes, if they wanted to reduce their setbacks smaller than the ten-foot or the seven-foot setback there were certain sprinklering or wall...

Mr. Fletcher said of fire rated wall with no opening.

Ms. Dang said what we have learned now, and what we will share more next time, is the Fire Department would be comfortable with certain openings that met certain fire requirements. They were willing to consider that and build that into that special use permit ability.

Mr. Fletcher said you were saying earlier that you were comfortable with where this was heading. What I thought you meant was through the avenue of a special use permit, is that correct?

Ms. Dang said yes.

Commissioner Seitz said I do not have any problem with this request. Again, for the record I am an architect so I have lived my life with the state Uniform Building Codes and the more we can avoid redundancy or overlapping jurisdictions between Zoning Ordinances and Building Ordinances...the life safety code as enforced through the Fire Marshals and stuff like that. I think the City of Harrisonburg does a great job of protecting public safety through the suite of codes and ordinances that builders and clients have to comply with. I just hope we do not make it more complicated than it needs to be.

Chair Baugh said I appreciate Commissioner Seitz input here and totally agree on the one hand that while we are all here and you have something on your mind this is a great time to bring it up. On the other, I think all we are being asked to do here is authorize staff to move forward to develop ordinances which we will then review in detail among other things once they exist. If anyone is in favor, I would certainly be happy to entertain a motion to that affect.

Commissioner Kettler said I move that the Planning Commission initiate consideration of zoning ordinance amendments to the City of Harrisonburg Zoning Ordinance to amend provisions relating to setbacks in the R-8 district, meat processing and storage facility in the M-1 district, and sign regulations. The Planning Commission finds that such amendments are required by the public necessity, convenience, general welfare, and good zoning practice, and hereby directs staff to prepare appropriate draft ordinances for public hearings and recommendations in accordance with § 15.2-2286 of the Code of Virginia.

Vice Chair Porter seconded the motion.

8

Planning Commission
November 13, 2025

Chair Baugh called for a roll call vote.

| | |
|---|---|
| Commissioner Seitz | Aye |
| Vice Chair Porter | Aye |
| Commissioner Kettler | Aye |
| Commissioner Jezior | Aye |
| Chair Baugh | Aye |

The motion to initiate consideration of a zoning ordinance amendment passed (5-0).

## Public Comment

None.

## Report of Secretary & Committees

### *Rockingham County Planning Commission Liaison Report*

Vice Chair Porter reported on the November 5, 2025, Rockingham County Planning Commission meeting. The following items were on the agenda:

- Public hearing for a request from Yasin Soufi Nejad to rezone (Tax Map # 95-A-83F) 1.6 acres from RR-1 (Residential or Recreational) to A-2 (General Agricultural) - tabled
- Public hearing for a request from Weidig Family Trust and DR Horton to rezone (Tax Map # 125-A-20G) two parcels totaling approximately 44 acres from A-2 (General Agricultural) to R-5 (Planned Neighborhood) – tabled

### *Board of Zoning Appeals Report*

Ms. Dang said the only update I wanted to share was that Council did appoint a new person to the BZA and his name is Todd Alexander.

### *City Council Report*

Mr. Fletcher reported on items from Planning Commission that were presented to City Council.

At the November 12, 2025 City Council meeting:

- Public hearing to rezone 2410 Reservoir Street – approved
- Public hearing to rezone 320 South Main Street - approved

## Other Matters

Commissioner Kettler said looking at some of the other things that we are talking about I was wondering if there was a change in the status of what zoning reform was looking like.

Planning Commission
November 13, 2025

Ms. Dang said no change in terms of what is publicly out there right now. This whole time staff has been working on the ordinance amendments. We had an internal meeting with City departments and have regrouped. Wesley is taking a more active role to help get us to the finish line. He and I are going to continue to co-lead this project. At this point in time, I do not have a schedule in terms of when there will be public engagement. I hope in 2026 we will have that information for you all. We are working with the Director of Communications and Engagement on the public engagement planning and things for that project as well.

Commissioner Kettler said obviously you do not have any kind of timeline or anything but is there an idea of when it might be a good time to check in about that.

Ms. Dang said any time you wish. We will be happy to share if we have information to share.

Vice Chair Porter said our [Comprehensive] Plan was drafted back in 2018. Generally, it is considered best practice to have it reviewed or updated every five years or so. Do we have any sense of when we might tackle that again?

Ms. Dang said at the five year mark the Planning Commission at that time did make a motion to say that it does need to be updated  and the decision upon staff's recommendation was that we wanted to finish the Zoning Ordinance update and then we will tackle the Comprehensive Plan update.

Commissioner Kettler said is that still staff's position?

Ms. Dang said yes.

***Review Summary of next month's applications***

Ms. Dang said we have five items on the agenda. My recommendation is that we have one Planning Commission meeting to cover all of these items. There is the Zoning Ordinance amendment int he R-8 that we just discussed. A special use permit at 380 Sunrise Avenue that would be able to use that Zoning Ordinance amendment if it was approved. A rezoning but really it is a proffer amendment and rezoning of the Sunshine Apartments. Those are the apartments that were proposed to be behind or actively under design right now behind La Morena on Chicago Avenue. A requested rezoning on North Liberty Street at the corner of Liberty and Charles Street. Then a Zoning Ordinance amendment that you just heard about meat processing and storage by special use permit in the M-1 general industrial district.

The meeting adjourned at 6:29 PM.

Planning Commission
November 13, 2025

_____     _____
Richard Baugh, Chair                         Anastasia Montigney, Secretary



November 13 2025 Planning Commission Meeting

## Title
Zoning Ordinance Amendment, Inpatient Substance Use Disorder Treatment Facility, Hospitals, and Other Related Terms — Thanh Dang, Community Development

## Summary

| | |
|---|---|
| Zoning Ordinance Sections | Amend Sections 10-3-24, 10-3-48.3, 10-3-48.4, 10-3-55.4, 10-3-56.3, 10-3-57.3, 10-3-58.4, 10-3-78, 10-3-84, 10-3-90, 10-3-91, 10-3-97, and 10-3-186 |
| Purpose | • To add a new term and definition for a use known as an "Inpatient Substance Use Disorder Treatment Facility" and to allow it by special use permit in both the R-3, Medium Density Residential District and B-2, General Business District.<br>• To add a definition for "Hospitals" and to allow it by right in the B-2, General Business District.<br>• To make amendments to other related terms.<br>• To amend zoning district regulations to reflect new and amended terms. |
| Applicant | City of Harrisonburg |
| Planning Commission | October 8, 2025 (Original Public Hearing)<br>October 30, 2025 (Motion to Initiate Zoning Ordinance Amendment)<br>November 13, 2025 (Public Hearing) |
| City Council | Anticipated December 10, 2025 (First Reading/Public Hearing)<br>Anticipated January 13, 2025 (Second Reading) |

## Recommendation
Option 1. Recommend approval of the Zoning Ordinance amendments.

## Fiscal Impact
N/A

## Context & Analysis
On October 8, 2025, Planning Commission held a public hearing to consider Zoning Ordinance (ZO) amendments associated with inpatient substance use disorder treatment facilities, hospitals, and other related terms. Planning Commission recommended approval (6-0) of the ZO

amendments. After the public hearing, staff learned that § 15.2-2286(A)(7) of the Code of Virginia**,** requires, among other things, that ZO amendments and rezonings: "*be initiated (i) by resolution of the governing body; (ii) by motion of the local planning commission; or (iii) by petition of the owner, contract purchaser with the owner's written consent, or the owner's agent therefor, of the property which is the subject of the proposed zoning map amendment*." The proposed ZO amendment related to inpatient substance use disorder facilities had not been initiated by any of the aforementioned methods but was initiated by city staff because staff was previously unaware of the requirement. Once aware, a special meeting was called for October 30, 2025 where staff requested, a motion from Planning Commission to direct staff to prepare a draft ordinance for public hearing and recommendation related to inpatient substance use disorder treatment facilities, hospitals, and other related terms.

Currently, inpatient substance use disorder treatment facility uses are allowed by right in the R-3, Medium Density Residential District within a broadly-categorized group of medical-related uses per Section 10-3-48.3 (10). Specifically, subsection (10) allows for the following by right: *"Hospitals, convalescent or nursing homes, funeral homes, medical offices and professional offices as defined by article F."* Staff is proposing to amend the Zoning Ordinance by defining "inpatient substance use disorder treatment facility" and separating it from other medical uses and only allowing it by special use permit (SUP) in both the R-3 district and the B-2, General Business District. Making these amendments would provide the community an opportunity to assess potential impacts of a desired location and how the use could affect other community services.

The entirety of the proposed ZO amendment is provided within the attached document titled "Current Ordinance Reflecting Recommended Amendments." For ease of reference, the proposed definition of "inpatient substance use disorder treatment facility" is shown below:

> *Inpatient substance use disorder treatment facility:* A facility licensed by the Department of Behavioral Health and Developmental Services of the Commonwealth of Virginia that provides living, sleeping, and sanitation accommodation for substance use disorder treatment service delivered on a 24-hour per day basis in an alcohol or drug rehabilitation facility or an intermediate care facility.

If the ZO amendments are approved as drafted, individuals wanting to establish a new inpatient substance use disorder facility must receive City Council's approval of a SUP to locate on an R-3 or B-2 zoned property and would continue to not be permitted in any other zoning district.

On September 15, 2025, a building permit application was filed for an inpatient substance use disorder treatment facility on property zoned R-3. Because the use is currently allowed by right, the applicant may gain vested rights to operate, making the facility a lawful nonconforming use if this ordinance amendment is adopted. A nonconforming use may continue to operate, but any future expansion of the facility would require a SUP. There are no other inpatient substance use disorder treatment facilities in Harrisonburg.

2

Note that there are several outpatient substance use disorder treatment facilities operating in the City within the B-1 and B-2 districts. Outpatient substance use disorder treatment facilities are part-time programs that do not provide overnight services meaning that patients receive treatment while also being able to return home, to work, and/or school. At an inpatient substance use disorder treatment facility, patients stay at the treatment facility where they receive 24-hour support and care. Typical inpatient substance use disorder treatment programs run anywhere from several weeks to several months.

While drafting the amendments for inpatient substance use disorder treatment facilities, it was clear that further amendments were needed to the ZO. Thus, in addition to the aforementioned amendments, staff is proposing the following:

- To add a definition for "hospital" and, due to the intense nature of such a use, remove the ability to locate a hospital in the R-3 district and to only allow it by right within the B-2 district.
- To add a definition and create a new use for "institutional care facility."
- To add clarity and consistency with Virginia Code definitions by modifying the following existing ZO definitions: "Assisted Living Facility,"[1] "Family," "Nursing Home,"[2] and "Professional Offices."
- To change the term "Clinic" to "Medical clinic" and modify that definition. Along with amending the definition, changes would be made to allow medical clinics as a by right use in the R-6, Low Density Mixed Residential Planned Community District; the R-7, Medium Density Mixed Residential Planned Community District; the MX-U, Mixed Use Planned Community District; the B-1A, Local Business District; the B-1, Central Business District; and the R-P, Residential-Professional District (Overlay). Furthermore, the modification would add the ability for medical clinics by SUP in both the R-5, High Density Residential District and the M-1, General Industrial District.
- To change the term "Medical offices" to "Medical clinics" in the R-3, Medium Density Residential District.

No changes are proposed to other district regulations including the other R-3 district, which is known as R-3, Multiple Dwelling Residential District. As indicated at the beginning of Article J., the R-3, Multiple Dwelling Residential District regulations are only applicable to multi-family developments with engineered comprehensive site plans approved before August 14, 2010.

---

[1] Assisted living facility,  https://law.lis.virginia.gov/admincode/title22/agency40/chapter73/section10/ and https://www.dss.virginia.gov/facility/alf.cgi.

[2] Nursing home, https://law.lis.virginia.gov/vacode/32.1-123/ and https://www.vdh.virginia.gov/licensure-and-certification/division-of-long-term-care-services/

3

If the proposed ZO amendments are approved, the table below summarizes in which zoning districts the aforementioned uses would be allowed and whether they are permitted by right or with an approved SUP.

| | R-1, R-2, R-4, R-8, UR | R-3, Medium | R-5 | R-6 & R-7 | UR with R-P overlay | MX-U & B-1A | B-1 | B-2 | M-1 |
|---|---|---|---|---|---|---|---|---|---|
| **Assisted living facility** | - | by right | - | - | - | - | - | - | - |
| **Hospital** | - | - | - | - | - | - | - | by right | - |
| **Inpatient substance use disorder treatment facility** | - | SUP | - | - | - | - | - | SUP | - |
| **Institutional care facility** | - | by right | - | - | - | - | - | - | - |
| **Medical clinic** | - | by right | SUP | by right | by right | by right | by right | by right | SUP |
| **Professional office** | - | by right | SUP | by right | by right | by right | by right | by right | SUP |

*Conclusion*
Staff believes that Planning Commission and City Council should consider inpatient substance use disorder treatment facilities on a case-by-case basis so that the location and potential impacts can be evaluated. Staff recommends approval of the Zoning Ordinance amendments as proposed.

**Options**
1. Recommend approval of the Zoning Ordinance amendments.
2. Recommend approval of the Zoning Ordinance amendments with modifications.
3. Recommend denial of the Zoning Ordinance amendments.

**Attachments**
- Current Ordinance Reflecting Recommended Amendments

4